**HOOVER GROUP, INC.,**
**Plaintiff–Appellee,**

v.

**CUSTOM METALCRAFT, INC.,**
**Defendant–Appellant.**

No. 93–1263.

United States Court of Appeals,
Federal Circuit.

Sept. 19, 1995.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Oct. 27, 1995.

Timothy C. Russell, Sonnenschein Nath and Rosenthal, Washington, DC, argued for plaintiff-appellee.

Dennis L. Thomte, Zarley McKee Thomte Voorhees and Sease, Omaha, NE, argued for defendant-appellant.

Before ARCHER, Chief Judge, NEWMAN and CLEVENGER, Circuit Judges.

Opinion for the court filed by Circuit Judge NEWMAN. Circuit Judge CLEVENGER concurs in the result.

PAULINE NEWMAN, Circuit Judge.

Custom Metalcraft, Inc. (Custom) appeals the decision of the United States District

Court for the District of Nebraska[1] that certain of its liquid storage tanks infringed United States Patents No. 4,840,284 (the '284 patent) and No. 4,785,958 (the '958 patent), owned by Hoover Group, Inc. (Hoover). We affirm the decision of validity of both patents and infringement of the '284 patent. We reverse the decision of infringement of claim 1 of the '958 patent. On remand for assessment of damages, the district court may consider whether claim 2 or 3 of the '958 patent is infringed.

## BACKGROUND

Both parties are manufacturers of metal tanks for holding and transporting liquids. The products at issue are sloped-bottom tanks of varying structure. The principle of sloped bottoms to facilitate drainage is not new, and the prior art shows tanks containing double bottoms and other ways of adjusting the bottom slope. Hoover states that an advantage of its patented tanks is their simplicity and ease of manufacture, reducing cost and enhancing durability while enabling the requisite complete drainage with the advantage of side discharge. Hoover states that no previously existing tank design met all of these criteria.

The '958 patent is directed to a tank having several structural elements, wherein a bottom plate has a bend radiating from the discharge opening, and a "divergent gap" that creates the sloped surface when the gap is closed. Claim 1 is directed to the tank structure, and claims 2 and 3 to its method of manufacture. Claim 1 follows:

1. A portable tank for liquid storage and transport having generally vertical sides and a sloped bottom for complete drainage of fluid from the tank, said bottom having upturned side portions that merge with upwardly extending wall portions terminating in a substantially horizontal upper edge, said bottom comprising:

a generally flat, rectangular bottom plate having a plurality of edges;

a discharge opening through said bottom plate near one of said edges;

a bend in said bottom plate radiating from said discharge opening in a direction extending away from said one edge;

a closed seam connecting said one edge with said opening, said seam formed from a divergent gap in the plate extending from the opening to said one edge, said gap converging at the opening so that when the gap is closed the bottom plate at the opening is moved downwardly to position said opening at the lowest point in said plate whereby liquid in said tank will be caused by gravity to flow into said bend and along said bend to said discharge opening to cause complete drainage of the tank contents without tipping of the tank.

The '284 patent has one claim, to a tank wherein a sloped bottom is created by a plurality of contoured surfaces and creases in the metal plate, directed to the discharge opening:

1. A portable tank for fluid storage and transport having generally vertical sides and a sloped bottom for complete drainage of fluid from the tank comprising:

a generally rectangular bottom plate having upwardly curved side portions that merge with upwardly extending wall portions that terminate in a substantially horizontal upper edge,

said bottom plate having an inner surface and an outer surface and having a discharge opening therethrough, said inner surface having a plurality of smooth contoured surfaces sloped toward said discharge opening and a plurality of creases between said sloped surfaces directed toward said discharge opening to thereby slope substantially all of said inner surface toward said discharge opening,

said side walls being mounted on and secured to said upper edge of said bottom plate,

said outer surface being contoured like said inner surface,

a plurality of feet attached to said outer surface of said plate and positioned at the corners of said plate, each of said feet having a sculptured upper edge conforming in shape to said bottom plate outer

surface at the corner of said plate and being secured to said outer surface so that when said feet are resting on a horizontal surface said discharge opening is positioned at the lowest elevation of said bottom plate and said inner surface presents a smooth contoured surface sloping toward said discharge opening.

The district court found that none of the prior tanks of Custom or Hoover anticipated or barred either patent, that Custom had adduced no evidence on the issue of obviousness, and that both patents were infringed.

## ANTICIPATION

Custom asserted that the patents in suit were invalid pursuant to 35 U.S.C. § 102(a) and (b), based on various tanks sold by Custom and Hoover before the filing dates of the patents in suit.

■ A patent is invalid if the claimed invention was "known or used by others in this country ... before the invention thereof by the applicant for patent," 35 U.S.C. § 102(a), or was "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States," 35 U.S.C. § 102(b). Invalidity based on lack of novelty (often called "anticipation") requires that the same invention, including each element and limitation of the claims, was known or used by others before it was invented by the patentee. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576, 18 USPQ2d 1001, 1010 (Fed.Cir.1991); *Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 138, 231 USPQ 644, 646 (Fed.Cir.1986). Anticipation is a question of fact, and the district court's finding thereon is reviewed for clear error. *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply*, 45 F.3d 1550, 1554, 33 USPQ2d 1496, 1498 (Fed.Cir.1995); *Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1458, 221 USPQ 481, 485 (Fed.Cir.1984).

■ Custom asserted that several of its products embodied the inventions of the patents in suit and were sold more than a year before the filing dates of the patents (Jan. 15, 1988 for the '284 patent and Mar. 28, 1988 for the '958 patent), thus establishing a bar under § 102(b) that did not require Custom to prove prior knowledge, before Hoover's date of invention, under § 102(a). The products that Custom asserted against the '284 patent were a bin for holding granulated sugar sold to Plough, Inc. in 1982; a tank to hold fertilizer sold to Forest Lytle & Sons in 1981; and three tanks that were sold to AT & T, Nalco Chemical Co., and Progress Industries, which the district court called the "center discharge tanks." The products asserted against the '958 patent were certain Custom tanks sold to Four Seasons Paint Co. and the Missouri Highway and Transportation Department in the spring of 1987. Custom also alleged that certain tanks sold by Hoover to W.R. Grace & Co. on March 20, 1987 were manufactured in accordance with the '958 patent.

All of these prior tanks were the subject of testimony, drawings, and exhibits at trial. The district court found that each of the alleged anticipatory tanks lacked one or more of the elements or limitations of the claims of the patent against which they were asserted. With respect to the '284 patent, the district court found that the Plough sugar bin was not a tank suitable for storing liquids, but a bin for storage of dry materials; the suitability of this bin for storing liquids was the subject of conflicting testimony at trial. The district court also found that the three center discharge tanks did not have slopes caused by the presence of "a plurality of creases" and were not completely draining, lacking "a smooth contoured surface sloping toward said discharge opening." Witnesses for both sides testified concerning these facts. The district court's findings have not been shown to be clearly erroneous, including the ultimate findings that these tanks did not anticipate and did not bar the '284 patent.

Concerning Custom's sales to the Missouri Highway Department and the Four Seasons Paint Co., the district court reviewed the evidence concerning these tanks and found that the bottom of each tank was formed by a plurality of creases, a feature absent in the '958 patent, and that the inner surfaces were planar, not curved as in the '958 patent. Custom has not shown that the court's find-

ings of fact were clearly erroneous. In addition, Custom does not allege clear error in the district court's finding that the tanks sold by Hoover to W.R. Grace did not embody the subject matter of the claims of the '958 patent.

No prior device was shown, by clear and convincing evidence, to contain all of the elements and limitations of either patent's claims. The district court's ruling that the patents in suit are not invalid in terms of 35 U.S.C. § 102(a) or (b) is affirmed.

## OBVIOUSNESS

■ Custom asserted in its pleadings that the inventions of the '284 and '958 patents would have been obvious to one of skill in the field of the invention at the time the invention was made, and thus are invalid pursuant to 35 U.S.C. § 103. The district court found that Custom had introduced no evidence at trial as to obviousness.

Custom states that the evidence it adduced in connection with the issue of novelty is also relevant to obviousness. Custom argues that the prior tanks it asserted to be anticipations of the patents in suit, and its expert's testimony that there were no differences between these tanks and the patented tanks, are also probative of the obviousness of the patented tanks. On this appeal Custom points to the testimony of its experts and other witnesses as to their technical background, as evidence of the level of skill in the art. Yet this testimony was presented to qualify the witnesses, not to establish the level of ordinary skill in this field or to provide a basis for deciding what a person of ordinary skill would have deemed to be obvious at the time the invention was made. Hoover states that none of this evidence was presented as showing obviousness under § 103, and that its introduction at trial was directed solely to the issue of anticipation.

Hoover states, without contradiction, that Custom stipulated before trial that its patent expert would not testify as to obviousness. The district court appears to be quite correct that "Custom failed to present any testimony supporting this theory of invalidity." We do not discern reversible error in the district court's conclusion that an obviousness defense was not presented at trial.

Absent decision of the issue at trial, it is not before us for appellate review. *Cf. Cardinal Chemical Co. v. Morton Int'l, Inc.,* —— U.S. ——, 113 S.Ct. 1967, 124 L.Ed.2d 1, 26 USPQ2d 1721 (1993) (issues of patent validity that were decided at trial require appellate review, even when patents are found not infringed upon appeal).

## INFRINGEMENT

### The '284 Patent

■ The district court found that certain tanks sold by Custom in February of 1987 (the Four Seasons tanks) infringed claim 1 of the '284 patent. Custom points out that the '284 patent did not issue until 1989, and that a patent can not be infringed by sales made before its issuance. *See State Indus., Inc. v. A.O. Smith Corp.,* 751 F.2d 1226, 1237, 224 USPQ 418, 425 (Fed.Cir.1985) ("A patent has no retroactive effect.") Hoover states that the Four Seasons tanks were "the template for a long line of identical Custom products" that were manufactured or sold after issuance of the '284 patent. Hoover states that the expression "Four Seasons tanks" was used at trial as a kind of shorthand to refer to this line of tanks.

At trial, Hoover introduced Custom's work orders containing engineering drawings showing how these tanks were constructed. Hoover also presented expert testimony of how tanks built from these work orders meet the limitations of the '284 patent claim, and when the tanks were manufactured or sold. Custom does not dispute Hoover's characterization of the evidence and the understanding of its purpose at trial. Custom directs us to no evidence contradicting Hoover's assertion that the later-built tanks were shown at trial to be in all relevant aspects the same as the Four Seasons tanks. Nor does Custom appear to have raised at trial any issue of structural differences within this line of tanks.

Although the district court mistakenly attributed liability for infringement to the original Four Seasons tank, clear error has not been shown in the district court's finding that

this tank structure is an infringement of the '284 patent. Hoover may of course obtain damages only for acts of infringement after the issuance of the '284 patent, a matter reserved to the damages phase.

### The '958 Patent

The district court also found infringement of the '958 patent by tanks sold by Custom after November 22, 1988, the date of patent issuance. Custom states that the district court ignored a claim element that is not present in the accused tanks, and that claim 1 is not infringed.

■ Infringement analysis is conducted in two steps. First the claims are construed as a matter of law, even though it is necessary to resolve a dispute concerning the meaning or scope of the claims or any term of the claims. Claim construction is decided *de novo* on appeal. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (*en banc*). The trier of fact then determines whether the accused device is within the scope of the claims as construed. *Markman*, 52 F.3d at 976, 34 USPQ2d at 1326.

■ Claim 1 of the '958 patent requires "a bend in said bottom plate radiating from said discharge opening in a direction extending away from said one edge." Claim 1 also requires that the bend is configured so that when the convergent gap is closed "liquid in said tank will be caused by gravity to flow into said bend and along said bend to said discharge opening."

The district court construed claim 1 to mean that "[t]he direction of the bend in the tank bottom is not part of the claim limitation of the '958 patent," and therefore that the "bend" can be in the shape of either an inverted V, *i.e.*, a bend extending upwardly into the tank; or a V, where the bend extends downwardly forming a trough. Thus the accused tanks, all of which had a divergent gap structure, were found to infringe although their bend in the bottom was bent in the shape of the inverted V, instead of the V-shaped trough that was illustrated in the specification. A trough-shape is required to achieve the gravity flow of liquid "into said

bend and along said bend," as the claim states.

Hoover argues that liquid can flow by gravity "into" an upwardly extending bend if the meaning of the word "into" is taken to include "in the direction of" or "so as to strike." The experts at trial offered opposing views. However, none of the drawings of the '958 patent shows an upwardly extending (inverted V) bend, and the possibility that the bend might be so configured is not mentioned in the specification. Hoover directs us to nothing in the specification, prosecution history, or prior art to suggest other than the ordinary meaning of liquid flowing "into and along" the bend in the bottom of the tank. We conclude that claim 1 of the '958 patent requires the bend in the bottom of the tank to extend in the downward direction, to form a trough whereby gravity will cause liquid to flow into and along the bend to the discharge opening. Consequently, a tank whose bottom has only an upwardly extending bend, as the district court found Custom's accused tanks to have, does not infringe claim 1 of the '958 patent.

The district court's finding of infringement was based upon an incorrect construction of the claim. On correct construction, we have been directed to no potential finding or inference that could support a holding of infringement by tanks that do not have the structure whereby liquid flows into and along the bend in the bottom. The finding of infringement of claim 1 must be reversed.

The '958 patent has three claims, claim 1 being directed to a tank of specific structure and claims 2 and 3 to methods of constructing tanks. The district court did not indicate which of the claims he found infringed. Custom argues that Hoover offered no evidence at trial that any of the accused tanks were built by the methods of claims 2 and 3, and urges that the district court found only claim 1 infringed. Hoover argues that its evidence shows Custom manufactured and sold tanks "with structures materially identical to that described in claim 1, and built in accordance with the methods described in claims 2 and 3." The district court's opinion discusses only the structure of the tanks alleged to infringe the '958 patent and not their method

of manufacture, although the court found "the patent" infringed. In the absence of findings relating to the method claims, we are unable to review the decision with respect to claims 2 and 3. On remand, the district court may consider whether claims 2 and 3 are infringed, based on our interpretation of claim 1.

### ATTORNEY FEES

Custom requests attorney fees based on its charge that Hoover initiated this lawsuit after being apprised by Custom that there were tanks that anticipated the patents in suit. Since the district court determined that the prior tanks did not anticipate, Custom's request is plainly without substance, and is denied. Hoover, in turn, requests attorney fees based on its charge that Custom filed a frivolous appeal. Since one of the district court's adverse determinations has been reversed on appeal, Hoover's request is plainly without substance, and is denied.

It surely is apparent to counsel for both sides that these allegations of frivolous or improper behavior are unwarranted. Such charges are as unprofessional as the conduct they purport to criticize; they waste the court's time and squander the client's money. They are not viewed with favor.

### CONCLUSION

The decision that the '284 and '958 patents are not invalid is affirmed, as is the decision that the '284 patent is infringed. The decision that the '958 patent is infringed is reversed as to claim 1, and remanded as to claims 2 and 3.

### COSTS

Each party shall bear its costs.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*