Dorothy J. BELL, Shirley J. Sims, Katey Weatherspoon, Martha Cowan, Anita Prysock and Lillie Yarborough, and on behalf of all persons similarly situated, Plaintiffs,

v.

AUTOMOBILE CLUB OF MICHIGAN, Detroit Automobile Interinsurance Exchange, Motorland Insurance and Group Insurance Company of Michigan, Defendants.

Civ. A. No. 39309.

United States District Court,
E. D. Michigan, S. D.

April 7, 1978.

On Motion for Reconsideration
June 8, 1978.

On Issue of Remedy Oct. 19, 1978.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

The court presently has before it three motions for decision. They are (I) plaintiffs' motion to punish defendants for contempt and for sanctions; (II) plaintiffs' motion for sanctions for failure to answer plaintiffs' fourth interrogatories and to preserve records; and (III) defendants' motion to dismiss claims of certain named plaintiffs under Title VII of the Civil Rights Act of 1964.

### I. Plaintiffs' Motion to Punish Defendants for Contempt and for Sanctions

In this motion plaintiffs raise a number of problems that have occurred in the course of discovery in this case. The motion can be broken down into three areas of specific concern: (A.) discovery of the Alkema binder on "reasons for move"; (B.) discovery of the materials identified by plaintiffs as the "book of blacks"; and (C.) prob-

lems encountered in setting up a computer data bank.

■ The court will deal with each of these problems separately in this order. However, as a preliminary matter, it should be noted that defendants have raised the issue of the propriety of imposing monetary sanctions for failure to make discovery when the moving party is being financed by a third party, not a party to the suit. Rule 37 provides in both sections (b) and (d) that the court may make such orders involving sanctions "as are just". The function of imposing sanctions is to assure both future compliance with the discovery rules and to punish past discovery failures, as well as to compensate a party for expenses incurred due to another party's failure to properly allow discovery. That being the case, the method of financing of litigation is not relevant to a determination of the question of whether to impose monetary sanctions. Therefore, the fact that in the instant suit many of the costs have been borne by Focus: Hope has no relevance to this court's determination of what, if any, sanctions might properly be imposed against the defendants.

### A. Discovery of the Alkema binder on "reasons for move"

Plaintiffs have complained that defendants failed to make discovery in that they failed to identify certain materials relating to the relocation of the defendant's headquarters in response to interrogatories that, if fully answered, would have elicited the identification.

On February 20, 1974, this court entered an order staying these proceedings in order that further efforts could be undertaken before the EEOC to settle the claims in this case. This stay was pursuant to 42 U.S.C. 2000e–5(f)(1) which permits a court to stay proceedings up to 60 days for further efforts before the EEOC. In the February 20, 1974 order, the court also granted plaintiffs' motion to compel answers to plaintiffs' first set of interrogatories and provided that defendants should answer such interrogatories within 30 days after the com-

pletion of the EEOC's proceedings. As the plaintiffs have pointed out in their motion for sanctions, this would require answers within 90 days of the date of the order, or on or about May 20, 1974.

Included in plaintiffs' first set of interrogatories, and subject to this court's order of February 20, 1974, were interrogatories 71, 72 and 74. The court has examined these and finds that they are framed so that a proper answer to them would call for the identification of a document such as the Alkema binder on "reasons for move". At the time these interrogatories were served, the Alkema binder was existing. Following the court order of February 20, 1974 and the failure of defendants to identify this document, there were representations made by defendants at several times and in several different contexts that all documents relating to the relocation had been identified and provided to the plaintiffs. In particular, defendants' third supplementary answers to plaintiffs' first interrogatories filed on November 22, 1974 contained such a representation.

The Alkema binder was, however, not revealed to plaintiffs. The binder which contained the report entitled "reasons for the move" was first discovered by one of plaintiffs' counsel's assistants in February of 1976 when the assistant, Mr. Kudek, was permitted to examine the Alkema binders.

The court finds that this binder should have been identified by defendants in response to plaintiffs' first set of interrogatories and certainly in compliance with this court's order of February 20, 1974. The court finds that the failure of defendants to identify this document was inexcusable and unjustified. The court further finds that the circumstances in this case would not make an award of expenses unjust.

The plaintiffs have requested various sanctions under F.R.Civ.P. 37(b). The court has reviewed these requests and finds that the following sanctions are just and appropriate in this case:

1.  Plaintiffs will be permitted to take the depositions of all individuals who prepared the Alkema relocation study or who are the sources of, or have knowledge pertaining to the contents of the study, or who were previously deposed by plaintiffs while plaintiffs had no knowledge of the Alkema binder. These depositions shall be taken forthwith. All reasonable expenses, including attorney's fees incurred in the taking of these depositions, shall be paid by the defendants.

2.  The defendants shall be required to pay to the plaintiffs the reasonable expenses, including attorney's fees, that have been expended by plaintiffs, plaintiffs' attorneys or any other source on behalf of plaintiffs, because of defendants' failure to comply with this court's order of February 20, 1974 insofar as this order required the identification of the Alkema study. This amount shall also include all fees and expenses that were incurred by any of the above-mentioned parties, in obtaining any discovery up until February, 1976, that related to reasons for the relocation which fees or expenses would not have been incurred but for the failure of defendants to identify the "reasons for the move" document in its response to plaintiffs' first set of interrogatories.

3.  Defendants shall pay to plaintiffs all reasonable expenses, including attorney's fees incurred in obtaining this order.

4.  The plaintiffs are directed to file, within 30 days from the date of this order, a complete and detailed statement of expenses and fees that plaintiffs believe fall within the above defined parameters. Upon the filing of such a statement, and the service of such statement on opposing counsel, defendants will have 15 days within which to file specific objections. The objections shall be limited to the issue of whether any particular item falls within the above defined parameters. If any objections are filed, the court will set the matter

down for prompt hearing at which time the court will make findings as to the appropriateness of the inclusion within the award of any item objected to by defendants.

B. *Discovery of materials identified by plaintiffs as the "book of blacks"*

Plaintiffs have asked for sanctions against defendants based on defendants' apparent effort to conceal the existence of a number of materials which plaintiffs have chosen to identify as the "book of blacks". The court has examined these materials and finds that they are a very valuable part of the documentary discovery in this case. Had they been revealed and provided to the plaintiffs at a point earlier than January of 1976, they certainly would have expedited discovery and possibly would have obviated the need for much discovery effort.

Upon examination of the materials submitted in connection with this motion for sanctions, the court has found that three, if not more, interrogatories submitted to defendants by plaintiffs called for, if answered fairly, the revelation and identification of the materials found in the "book of blacks". These interrogatories are in plaintiffs' first set of interrogatories. They are numbers 13, 19 and 88.

The responses of defendants to these interrogatories, as well as subsequent representations made by defendants or defense counsel, both formal, in depositions and letters to the court, and informal, in oral statements, appear to conceal the material and mislead the plaintiffs and the court into believing that materials such as those found in the "book of blacks" did not exist. The question of the availability of racial data on defendants' workforce was a main topic of discussion and inquiry throughout most of the discovery of this case.

In a letter from defense counsel to the court dated March 7, 1975, the following explicit representation appears on this subject:

"There are literally thousands of cardex cards, at least one being maintained for each current employee plus those maintained for past employees. As to past employees the cards for those who terminated prior to 1971, when firmly packed, occupy approximately 108 linear inches of file space. Most of these former employees are not on year end tapes, and so *the only source of race information on them would be to telephone or visit them,* assuming their telephone numbers or addresses have not changed since their employment ended. The magnitude of the task indicates the impossibility of its being performed, even if names and addresses were furnished." [emphasis supplied]. Attachment 14 to plaintiffs' motion to punish defendants for contempt and for sanctions.

In light of the subsequent disclosure of the materials in the "book of blacks", this is seen as a clear misrepresentation. Plaintiffs proceeded on the basis of this and other misrepresentations until January, 1976, when the "book of blacks" was discovered.

The court never entered a discovery order that required more complete answers to plaintiffs' first set of interrogatories number 13, 19 and 88. Nor was there ever a discovery order entered by this court that explicitly required that defendants identify the materials in the "book of blacks". However, it is clear to the court that the defendants, if answering plaintiffs' first set of interrogatories, numbers 13, 19 and 88, fairly and fully, should have identified these materials long before January of 1976. Further, it is clear to the court that if acting in good faith with the court, defendants should have disclosed the existence of these materials. Discovery is not to be treated as a game of hide and seek. It should be a forthright effort to expedite litigation so that there is no unnecessary waste of time or expense. This is particularly important in a complex case such as this one.

Does the court have the authority and power under the discovery rules to impose sanctions on the defendants for their failure to disclose the existence of the materials in the "book of blacks"?

■ The identification of the materials was called for by plaintiffs' first set of interrogatories. The defendants answered these interrogatories but did not reveal the existence of these materials. As stated before, the court never entered an order requiring more specific or complete answers to the specific interrogatories in issue. However, the court is of the opinion that it has the authority to impose sanctions under F.R.Civ.P. 37(d).

The court is aware that there is authority which indicates that Rule 37(d) sanctions are available only when there has been a "total failure to respond" to interrogatories by a party. *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 995 (8th Cir. 1975); *Halverson v. Campbell Soup Company*, 374 F.2d 810 (7th Cir. 1967). These cases indicate that the Rule 37(d) sanctions only lie where there has been "total non-compliance [by a party] with discovery", *Fox, supra*, at 995, and that this section of Rule 37 does not apply to punish a party for evasive or incomplete responses to interrogatories.

In the above cited cases, however, there was not the kind of discovery misconduct with which this court is here faced. Upon reviewing the record in this case, the court finds an unjustified attempt by the defendants to prevent proper and necessary discovery. In a case such as this one, Rule 37(d) should and does apply to give the court authority to impose sanctions on a party for failure to make discovery. The answers provided in defendants' responses to plaintiffs' first interrogatories, numbers 13, 19 and 88, were so misleading and deceptive as to constitute a failure to answer these interrogatories.

This case presents a situation in which defendants' answers to proper interrogatories impeded discovery rather than facilitated the preparation and trial of this lawsuit. It is similar to the case of *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145 (7th Cir. 1975). In that case, the Seventh Circuit held that the district court had authority under Rule 37(d) to impose sanctions on a party although that party had filed answers to interrogatories. The answers were evasive and, as this court has found, deceived and misled the other party in its preparation. The court wrote in *Airtex* :

"Airtex appeals the district court's award of expenses in connection with Airtex's failure to satisfactorily answer certain of Shelley's interrogatories. After reviewing the interrogatories and answers in question, we agree with the district court that . . . plaintiff should bear Shelley's expenses in investigating the matters the interrogatories concerned. Airtex's answers do not comport with the duty of cooperation and disclosure imposed by the discovery provisions of the federal rules. Airtex's answers were evasive and incomplete and appear to have been framed to impede discovery rather than to facilitate it. Under these circumstances, the district court was well within its discretion in awarding expenses to Shelley pursuant to Fed.R.Civ.P. 37.

"Although the district court did not cite the specific subsection of rule 37, its award was necessarily based on subsection (d). . . . Airtex . . . argues that rule 37(d) relates only to the situation where a party totally fails to file any answers to interrogatories . . It is true that rule 37(d) does not specifically cover giving answers that are evasive and incomplete, as distinguished from failing to answer at all . . . We believe, however, that when, as here, the fact that answers to interrogatories are evasive or incomplete cannot be determined until further proceedings have been conducted to obtain the information later determined to have been withheld, the evasive or incomplete answers are tantamount to no answer at all, and rule 37(d) is applicable. To hold otherwise would be to deny the interrogating party any remedy for a deliberate violation of rule 33." 536 F.2d at 155.

This court is in complete agreement with the *Airtex* court.

Accordingly, the court finds that it would be appropriate to award sanctions to plaintiffs based on defendants' failure to identify the materials in the "book of blacks".

The court finds that the failure of defendants was not substantially justified. Further, the court finds that the circumstances of this case do not make an award of expenses unjust.

The court orders the following:

1. Defendants will not be permitted at trial to deny the correctness of the information contained in the "book of blacks" materials.

2. Defendants shall pay the plaintiffs all reasonable expenses, including attorney's fees, whether incurred by plaintiffs, plaintiffs' counsel, or any other source on behalf of plaintiffs, which have been incurred and which would not have been incurred had defendants identified the materials found in the "book of blacks" in response to plaintiffs' first set of interrogatories.

3. Defendants shall pay to plaintiffs all reasonable expenses, including attorney's fees, incurred in connection with obtaining this order.

4. The plaintiffs are directed to file, within 30 days from the date of this order, a complete and detailed statement of expenses and fees that plaintiffs believe fall within the above defined parameters. Upon the filing of such a statement, and the service of such statement on opposing counsel, defendants will have 15 days within which to file specific objections. The objections shall be limited to the issue of whether any particular item falls within the above defined parameters. If any objections are filed, the court will set the matter down for prompt hearing at which time the court will make findings as to the appropriateness of the inclusion within the award of any item objected to by defendants.

C. *Problems encountered in setting up a computer data bank*

As the court has noted in the earlier sections of this opinion, discovery in this case has been complex and difficult. Plaintiffs have sought, and the court has agreed that they should be able to create, a computer data bank of certain of defendants' employee records.

In this court's order of April 23, 1975, the court ordered that:

"The use of computerized data requires the *co-operation of all parties.* The parties are directed to meet: (1) to resolve technological problems, (2) to determine what information, if any, contained on the tapes and in the cardex file will not be required by plaintiffs, (3) to establish what protective conditions, if any, are to be attached to the disclosure and use of this information, and (4) to determine appropriate costs." [emphasis supplied].

In subsequent orders, the court has sought to expedite the computerization of data in this case.

Plaintiffs have described a pattern of delay by defendants in this case which is inexcusable. Plaintiffs have asked the court to assess all of the costs of the preparation of the computer data bank against the defendants. While the court believes that it has the power to do this, the court will not, at this time, require the defendant to pay all the costs of the computer bank.

Certain expenses and fees incurred to date by plaintiffs in connection with the preparation of the computer data bank will fall within the parameters of the sanctions already granted in the earlier sections of this opinion. However, allocation of the major portion of the costs of preparing the computer bank will not be resolved at this time.

██ Both parties are specifically reminded that this court, in its order of April 23, 1975, required that the parties cooperate in setting up this computer bank. The parties are under a continuing duty to cooperate and are expected by the court to do so. The failure of either side to cooperate so as to expedite the completion of this computer data bank will be considered by the court in the future in determining the allocation of costs and further sanctions that may be appropriate.

The court will meet with the parties on Wednesday, April 26, 1978, at 2:00 p. m., to discuss the completion of the computer data bank. Counsel should come prepared to discuss and resolve all outstanding problems and deadlines required to complete this data bank.

II. *Plaintiffs' Motion for Sanctions for Failure to Answer Plaintiffs' Fourth Interrogatories and to Preserve Records*

Interrogatory No. 19 of plaintiffs' fourth set of interrogatories asks that defendants continue to provide, on a monthly basis, certain information required by interrogatories 16 through 18 of the fourth set. Defendants filed an answer to this interrogatory in which they agreed to provide this information *quarterly*, subject to certain limitations not relevant to this motion.

Subsequent to this, defendants failed to live up to its agreement to supplement certain of these interrogatories. The reasons for this failure were explained in a letter to plaintiffs' counsel from defendants' counsel dated June 9, 1977. In that letter, defendants' counsel wrote:

"As I noted previously, we no longer maintain the applicant/new hire reports. When we agreed to supply you with updates of various reports, we certainly did not intend to mean that we would forever keep preparing those reports. All we agreed to do, in our view, is supply you with updates of anything that we continue to prepare. Since we do not prepare these reports any longer, there is nothing to supply to you."

Attachment B to plaintiffs' motion for sanctions for failure to answer plaintiffs' fourth interrogatories and to preserve records.

This has prompted plaintiffs to file the instant motion.

The court has examined the materials submitted in connection with this motion. The court is of the opinion that by its answer to interrogatory no. 19, defendant undertook to continue to prepare any documents necessary to update its responses as required by interrogatory no. 19.

The court will construe the instant motion as a motion to compel under F.R.Civ.P. 37(a). Having considered the matters raised in this motion, the court finds that it would be appropriate to order the defendant to continue to update its answers as requested by plaintiffs' interrogatory no. 19, plaintiffs' fourth set. This is so ordered. If certain reports must be prepared by defendant in order to update its answers to the interrogatories as requested by interrogatory no. 19 and such reports are no longer prepared, the defendants are ordered to prepare such reports. Defendants are further ordered henceforth to update the interrogatories requested in interrogatory no. 19 *monthly* as originally requested by that interrogatory.

■ The court further finds that the opposition to this motion by defendant was not justified and that an award of expenses to the plaintiffs would not be unjust. Therefore, the court awards the plaintiffs its reasonable expenses, including attorney's fees incurred (whether by plaintiffs, plaintiffs' attorneys or by any other source on behalf of plaintiffs) in obtaining this order.

The plaintiffs are directed to file, within 30 days from the date of this order, a complete and detailed statement of expenses and fees that plaintiffs believe fall within the above defined parameters. Upon the filing of such a statement, and the service of such statement upon opposing counsel, defendants will have 15 days within which to file specific objections. The objections shall be limited to the issue of whether any particular item falls within the above defined parameters. If any objections are filed, the court will set the matter down for prompt hearing at which time the court will make findings as to the appropriateness of the inclusion within the award of any item objected to by defendants.

III. *Defendants' Motion to Dismiss Claims of Certain Named Plaintiffs under Title VII of the Civil Rights Act of 1964*

Defendants have moved to dismiss certain named plaintiffs on the ground that, as

to the Title VII claims, only those plaintiffs who have exhausted their remedies personally before the EEOC can be proper named plaintiffs and class representatives. Defendants do not take issue with these persons' membership in the class, only their status as named plaintiffs.

■ The court finds no merit in this argument. There are several plaintiffs who have exhausted their EEOC remedies and who have received right to sue letters. That being the case, there is no reason why the other plaintiffs should not remain as named plaintiffs. See: *Oatis v. Crown Zellerbach Corporation*, 398 F.2d 496 (5th Cir. 1968); *Local 179, United Textile Wkrs. v. Federal Paper Stock Co.*, 461 F.2d 849 (8th Cir. 1972); *Allen v. Amalgamated Transit Union, Local 788*, 544 F.2d 876 (8th Cir. 1977).

Further, the court is of the opinion that allowing these plaintiffs to remain as named plaintiffs can have no possible adverse effect on this litigation or on any party to this litigation and, in fact, will have the beneficial effect of insuring the strength of the class representation.

Therefore, defendants' motion is denied.

So ordered.

## ON ISSUE OF REMEDY

On April 7, 1978, this court found that the defendant in this suit had improperly withheld certain discovery materials. In connection with that finding, the court directed the defendant to pay to the plaintiffs the costs incurred by plaintiffs because of the misconduct by the defendant. Pursuant to that direction, a lengthy hearing was held and substantial evidence was produced to aid the court in determining the amount that defendant must pay to plaintiffs at this stage in the proceedings. The court has determined that defendant must pay to plaintiffs $52,089.73.

The evidence showed that there were substantial expenses undertaken by the plaintiffs, mostly through their attorneys, because of the defendant's failure to produce the materials requested. There were expenses alleged for xeroxing, telephone calls, travel, and the preparation of exhibits in addition to the amounts alleged for the services of the attorneys and their aides.

■ It is the intention of the court to penalize the defendant for its wrongdoing, but it is not the intention of the court to impose costs beyond those incurred by the plaintiffs and caused by the defendant's misconduct. Therefore, the penalty will be in the form of compensation.

The misconduct not only caused the plaintiffs to seek otherwise unnecessary discovery, but also caused them to expend a great deal of energy in securing the April 7 order of this court and in obtaining the firm dollar figure that is contained in this order. Had the defendant sought to lessen its losses by offering to pay the plaintiffs for their wasted discovery efforts before the sanctions process began, it would have saved a substantial amount of money, not only in satisfying this order, but also in the amounts paid out in opposing the motions filed by plaintiffs. It is interesting to note that approximately 85% of the total awarded today accrued after the wrongdoing had been uncovered and defendant was in an excellent position to avoid additional costs.

Defendant chose not to do this, and the result is that it must pay for the discovery efforts and for the sanctions process. While the effect of this order is merely compensatory to the plaintiffs, the court intends for it to be a penalty on the defendant.

In addition to the pecuniary benefit that would have inured to defendant by an early settlement of this dispute, the court would have been free to spend more of its time dealing with the other cases on its docket.

Although this order will not include a detailed list of each expenditure made, it need not be that specific; the court finds that the amount awarded is appropriate

both as a penalty to the wrongdoers and as compensation to those wronged. The discussion that will follow is to indicate the things that influenced the court in its decision to award the amount indicated.

In addition to the time spent by plaintiffs' representatives (including attorneys and aides), plaintiffs have asked for compensation for a number of other out of pocket expenses. These will be dealt with at the outset. Because there were other matters involved in many of the trips made in connection with these proceedings, the amounts claimed for travel, taxi, and parking have been cut in half. There has been no award for meals. The telephone charges have been awarded in full since they seem to have been rather closely watched to determine their connection to these proceedings. In addition, the cost of duplicating and of the construction of exhibit 8 are reasonable and have been awarded in full.

Next, we turn to the services performed by the attorneys and aides representing plaintiffs in this action. As earlier indicated by the court, the only proper way to award the expenses involved here is to assess the services of the attorneys at their reasonable value in this community (regardless of the amount actually paid to them), but to award only the amounts actually paid for the services of the aides.

Thus the first step in the process of determining the amounts to be awarded is to place a value on the attorneys' services. After considering the evidence presented on this issue, this court finds that the services of David Cashdan and those of Ernest Goodman should be valued at Sixty-five Dollars per hour, while those of Marijana Relich should be valued at Fifty Dollars per hour. This figure takes into account the fact that many of the hours worked in connection with this award were worked in the past when dollar values were less then they are today, and when these particular attorneys had less experience than they have now.

The attorneys' aides were paid at an hourly rate, but the total for our purposes must include the value of the fringe benefits they received as well. The volunteers were not paid, but the people who coordinated their efforts were, so the amount awarded reflects that. The evidence provided enables the court to do this without difficulty.

The time spent may be divided into three categories: unnecessary discovery efforts caused by the failure to produce the Alkema materials; unnecessary discovery efforts caused by the failure to produce the "Book of Blacks"; and efforts expended in seeking this order (including work on motions to compel and motions for sanctions).

There were some shortcomings in plaintiffs' proofs of their expenses. It appeared throughout that the record keeping process was not as efficient as it should have been. It also appeared that some things (such as the time spent in reading and analyzing the Alkema materials) were not caused at all by the defendant's misconduct and that others (such as the search of the Kardex) were not solely caused thereby. Another thing pointed out by the defendant is that at least one of the aides, Mr. Kudek, worked more than a forty hour week while his time in this proceeding was claimed based on an hourly rate obtained by dividing a week's pay by forty. This would lead to an unrealistically high hourly rate if not adjusted.

Because of the factors mentioned above, as well as other things pointed out in the hearing, the time claimed for the periods dealing with discovery of the Alkema materials and the "Book of Blacks" has been reduced by one-half. The charges for time spent reading and analyzing the Alkema materials has been eliminated altogether. These charges were only delayed by defendant's actions; they were not caused thereby. The time records seem to have been more carefully kept in the third segment of time involved, and as a result, the time claimed for the period dealing with the sanctions process has been reduced by only one-tenth.

The numbers work out as follows:

| EXPENSE | AMOUNT CLAIMED | PART ALLOWED | AMOUNT ALLOWED |
|---|---|---|---|
| Duplicating | $ 1,659.00 | All | $ 1,659.00 |
| Exhibit 8 | 150.00 | All | 150.00 |
| Telephone | 1,368.95 | All | 1,368.95 |
| Travel | 2,736.25 | 1/2 | 1,368.13 |
| Taxi | 41.00 | 1/2 | 20.50 |
| Parking | 57.00 | 1/2 | 28.50 |
| Meals | 69.65 | none | – |
| Cashdan (Alkema) | 2,843.75 | 1/2 (– 1/4 hr) | 1,413.75 |
| Cashdan (Book of Blacks) | 4,761.25 | 1/2 | 2,380.63 |
| Cashdan (Sanctions) | 35,490.00 | 9/10 | 31,941.00 |
| Relich (A) | 237.50 | 1/2 | 118.75 |
| Relich (B) | 675.00 | 1/2 | 337.50 |
| Relich (S) | 2,962.50 | 9/10 | 2,666.25 |
| Goodman (S) | 2,080.00 | 9/10 | 1,872.00 |
| Kudek (A) | 365.74 | 1/2 (– 24 1/4 hrs) | 80.17 |
| Kudek (B) | 1,697.98 | 1/2 | 848.99 |
| Kudek (S) | 5,673.15 | 9/10 | 5,105.83 |
| Faria (B) | 448.17 | 1/2 | 224.08 |
| Faria (S) | 317.16 | 9/10 | 285.44 |
| Brown (S) | 96.96 | 9/10 | 87.26 |
| Volunteers (B) | 266.00 | 1/2 | 133.00 |
| **Total Allowed** | **$64,071.31** | | **$52,089.73** |

The defendant is directed to pay to the plaintiffs $52,089.73 within thirty days of the entry of this order. If payment is not made within that time period, judgment will be entered for this amount.

There is one other small issue connected with this matter. Father Cunningham of Focus Hope was subpoenaed to appear at the hearing and he has asked the court to award his costs in inconvenience and attorney's fees since he claims to have had nothing of relevance to offer the court. The motion for expenses is denied. However, Father Cunningham should have been compensated through the statutory witness fee. 28 U.S.C. § 1821.

So ordered.