**EPCON GAS SYSTEMS, INC. and Norman Loren, an individual, Plaintiffs,**

v.

**BAUER COMPRESSORS, INC., Defendant.**

**No. 98–CV–75392.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 12, 2003.

---

Gerald E. McGlynn, III, Joseph G. Burgess, Brian S. Pickell, Bliss, McGlynn, Troy, MI, for Plaintiff.

Ernest I. Gifford, Gifford, Krass, Birmingham, MI, John A. Artz, John S. Artz, Artz & Artz, Southfield, MI, for Defendant.

## OPINION AND ORDER

TARNOW, District Judge.

On December 8, 1998, Plaintiffs Epcon Gas Systems, Inc. ("Epcon") and Norman Loren filed a complaint asserting that Defendant Bauer Compressors, Inc. ("Bauer") infringed Claims 2 and 16 of United States Patent 5,118,455 ("'455 patent"). In an Opinion and Order dated September 7, 2000, the Court addressed Bauer's two summary judgment motions, which asserted (1) lack of evidence and (2) invalidity. The Court granted summary judgment to Bauer on lack of evidence grounds as to both Claims 2 and 16 and declared the invalidity motion moot.[1] The Federal Circuit reversed in part on February 7, 2002—the Court's disposition of Claim 16 was affirmed, but the case was remanded on a portion of Claim 2.

The parties filed six motions on the remaining claim, three from each party:

(1) Plaintiffs' Motion for Summary Judgment of Infringement of Claim 2 of the '455 patent [68-1].

(2) Defendant's Motion for Summary Judgment of Non-infringement Based on Lack of Evidence [72-1].

(3) Defendant's Motion for Summary Judgment of Non-infringement Based on Lack of "Substantially Below" [71-1].

(4) Defendant's Motion for Summary Judgment that Patent No. '455 is Invalid under 35 U.S.C. §§ 102 and 103 [73-1].

(5) Plaintiffs' Motion for an Order Imposing Sanctions Against Bauer under Fed.R.Civ.P. 26(g) and 37(d)

and to amend the complaint pursuant to Fed.R.Civ.P. 15 [70-2].

(6) Plaintiffs' Motion for an Order Imposing Sanctions Against Bauer under Fed.R.Civ.P. 11(b)(4) [69-1].

The Court heard oral argument on all six motions on September 19 and 30, 2002. For the reasons discussed below, the Court GRANTS Defendant's Motion for Summary Judgment based on lack of evidence, GRANTS Defendant's Motion for Summary Judgment based on lack of "substantially below," DENIES Plaintiffs' summary judgment motion, DENIES Plaintiffs' sanction motions, and declares Defendant's other summary judgment motion on invalidity MOOT.

## I. BACKGROUND

### A. Substantive Facts

The following facts are taken from the Court's September 7, 2000 Opinion and Order:

Plaintiff Epcon Gas Systems, Inc. is in the business of manufacturing equipment for the plastics industry. Specifically, they manufacture and offer for sale machines based on U.S. patent 5,118,455, which are designed to be used in the production of injection molded plastic parts by forcing gas into a mold under pressure along with the liquid plastic or resin material. This pressure in the mold cavity is maintained until the plastic or resin material has cooled below its melting point, at which time the gas is vented to the atmosphere and the part is removed. Plaintiffs do not have a patent on the process of gas assisted injection molding. Rather, the patent in suit addresses a specific means of controlling the flow of gas into the mold during the molding process and of con-

---

1. The Court also denied Bauer's motion to declare the case exceptional, and the Federal Circuit affirmed. *Epcon v. Bauer*, 279 F.3d 1022, 1035 (Fed.Cir.2002).

trolling the gas pressure within the mold during the molding process.

This process has several advantages. Parts produced in this manner have a better surface finish than parts produced using other processes, because the pressure in the mold cavity forces the material to remain continually in contact with the inner face of the mold until it has solidified. Further, this process allows for parts with thinner walls to be manufactured (an advantage in itself in some applications), and thereby allows some savings in materials use as well. The device, which is described in the 455 patent, allows the pressure in the mold to be selectively increased, decreased or maintained at a constant pressure during the molding process, as required by the production process for whatever items are being molded. The sequence in which the pressure is varied during the molding process is called the "pressure profile."

Defendant Bauer Compressors manufactures and sells a device that is designed to control the flow of pressurized gas into a mold during the molding process.

. . .

Epcon alleges that the equipment sold by Bauer infringes its rights under the 455 patent because its system is capable of controlling the gas supply used in gas assisted injection molding of plastics materials by selectively increasing, decreasing and maintaining at a set level the gas pressure within the mold cavity. Technically, since Bauer does not itself sell a full line of injection molding equipment, Epcon alleges that Bauer induces or contributes to the infringement of the 455 patent by other firms by providing the equipment to those firms.

. . .

Bauer [responds that] it has not infringed the patent by its own terms. In order to be liable for direct infringement of the 455 patent, Bauer argues, it must manufacture gas assisted injection molding equipment and not merely a control unit. As mentioned above, Bauer does not offer a full line of injection molding equipment. Bauer also asserts that Epcon does not have any evidence that any of Bauer's customers have used any piece of allegedly infringing equipment in such a way as to infringe directly Epcon's rights under the 455 patent. Therefore, Bauer argues they cannot be liable for indirect or contributory infringement if plaintiffs cannot show any direct infringement.

*Epcon v. Bauer,* 134 F.Supp.2d 838, 840–41 (E.D.Mich.2000).[2]

Claim 2 reads in its entirety:

A method of providing gas assistance to a resin injection molding process of the type in which hot resin is injected into a mold, gas is injected into the mold to displace a portion of the resin in the mold, the resin cools, the gas is vented and the mold is opened to remove the molded part,

a supply of stored gas is provided,

(a) the gas is injected into the mold to displace the resin in the mold at a pressure that is at all times during the gas injection cycle substantially below the pressure of the stored gas supply,

(b) the improvement wherein, following the initial injection of gas into the mold, and prior to the venting of the gas from the mold, the gas pressure within the mold is selectively

    (1) increased,

    (2) decreased or

2. The parties, as they did the first time, have briefed whether the 455 patent is invalid. However, the Court does not need to address these arguments because the case can be resolved on lack of evidence grounds. .

(3) held substantially constant, depending upon the particular requirements of the molding process.

## B. *Procedural History*

The plaintiffs filed their complaint on December 18, 1998, and the Court held an initial *Markman* hearing[3] on February 28, 2000. On June 21, 2000, the Court heard closing arguments on the *Markman*/claim interpretation issue and oral arguments on Bauer's two motions for summary judgment.

On September 7, 2000, the Court issued an opinion granting Bauer's motion for summary judgment on lack of evidence grounds and denying Bauer's motion to have case declared exceptional. The plaintiffs appealed to the Federal Circuit. On February 28, 2002, the Federal Circuit issued an opinion, affirming in part on Claim 16 and the exceptional ruling, but reversing in part and remanding on a portion of Claim 2. On June 28, 2002, the parties filed six motions on the remaining issues in the case. The Court held oral argument on September 19 and 30, 2002.

## III. STANDARD OF REVIEW

Summary judgment standards apply in patent cases, just as in any other case. *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.* 520 U.S. 17, 39 n. 8, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party must meet its initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet this burden by demonstrating to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. *Bradford*, 886 F.2d at 1479.

To defeat summary judgment, the non-moving party must show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to judgment for the movant. Where "the moving party has carried its burden under 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the non-movant must present "affirmative evidence" to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether facts are material is determined by the substantive law governing the case. *Id* at 248, 106 S.Ct. 2505. All factual inferences must be viewed in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## II. DISCUSSION

Section A summarizes what issues remain in the case after the Federal Circuit's decision. Section B addresses the parties' summary judgment motions, and Section C addresses Plaintiffs' two motions for sanctions.

---

**3.** *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) (en banc), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In *Markman,* the Federal Circuit held that, in patent infringement cases which are to tried before a jury, the interpretation of the language used in the patent claim is a question of law which must be decided by the court.

### A. Issues remaining in the case after remand

In the September 7, 2000 Opinion and Order, this Court interpreted Claim 16 using 35 U.S.C. § 122, ¶ 6 and then found that Claim 2 was also subject to § 122, ¶ 6 and must be interpreted in the same way. *Epcon*, 134 F.Supp.2d at 844, 849.

The Federal Circuit affirmed this Court's ruling on Claim 16, but found that Claim 2 should have been interpreted independently from Claim 16. *Epcon v. Bauer*, 279 F.3d 1022, 1028 (Fed.Cir.2002). After subjecting it to an independent interpretation, the court said Claim 2 was a method claim, not a "step plus function" claim, so it should not have been subjected to § 122, ¶ 6. *Id.*

In light of its finding that Claim 2 is a method claim, the appeals court found one of this Court's rulings, construction of the term "venting," was incorrect.[4] The error, as explained by the higher court, was that, since Claim 2 is a method claim, it does not include the structure by which the "venting" is to be performed; thus, this Court improperly imported language about structure from the specification into the claim to fill the gap. *Id.* at 1032.

After noting the incorrect ruling, the Federal Circuit found that, because the appellate record included evidence from Epcon that Bauer performed demonstrations for several customers that may have included practicing the method of Claim 2, there might be an issue of fact for trial and remanded. *Id.* at 1034 ("Because Bauer used, offered to sell, and sold the NCU [nitrogen control unit] and a 'supply of stored gas' for use in gas assistance of injection molding, a genuine issue of fact

has been raised as to direct infringement of method claim 2.").

The Federal Circuit, in particular, pointed to four possible genuine issues of material fact for trial: 1) a demonstration for Florida Custom Mold employees by Bauer employees of a Bauer nitrogen control unit ("NCU"); 2) Bauer sold an NCU, a nitrogen generator and other related equipment to Tri Quest of Washington; 3) Mercer Molding in New Jersey had at least one Bauer NCU; and 4) more generally, other demonstrations by the Bauer Plastics Technology Group to unknown "prospective buyers", which included "supply[ing] a nitrogen control unit, explain[ing] how the unit needs to be hooked or connected to the molding machine and the mold itself and arrive at the customer's location and physically run the process in some applications." *Id.* at 1034 (quoting the testimony of Mr. Michael Lynch, sales manager for Bauer's Plastics Technology Group). Thus, on remand, this Court must evaluate the evidence to see if there is a genuine issue of material fact that any or all of these demonstrations infringe patent 455.

### B. Parties' Summary Judgment Motions

As an initial matter, both parties argue that the other improperly filed for summary judgment in light of past rulings by this Court and the Federal Circuit.

■ First, Bauer says that Epcon is "flagrantly" violating this Court's and the Federal Circuit's decisions by filing for summary judgment, since the same evidence they cite about Bauer's customers

---

4. Regarding all of this Court's other rulings, the Federal Circuit agreed with this Court that: 1) Claim 16 should have been construed according to § 112, ¶ 6, 2) the claims do not require that the accused device/method include a complete injection molding system;

3) the "supply of stored gas" language means that such a supply is integral, or a component part of the claimed apparatus and process; 4) the terms "substantial" and "control means" were interpreted correctly. *Epcon*, 279 F.3d at 1033.

infringing is the evidence found lacking by two courts already. Defendant asserts that the remand is only about whether Bauer itself, not its customers, infringed in the demonstrations and Epcon's motions do not reflect the narrowness of the remand.

However, plaintiffs respond that both courts previously found that there was no evidence of infringement by Bauer's customers under the claims as construed originally. Now that Federal Circuit has declared Claim 2 is a method claim rather than a structural claim, Epcon can present evidence that Bauer's clients used the method of Claim 2.

The plaintiffs are correct on this point. Because the construction of Claim 2 has been changed and corrected by the appeals court, Epcon can present the same evidence found lacking under the original claim interpretation.

Plaintiffs also argue that, because the Federal Circuit said there was a genuine issue of material fact for trial, the defendant improperly filed two motions for summary judgment. Bauer responds that, if plaintiffs are correct that the Federal Circuit declared there is an issue for trial, plaintiffs should not be filing for summary judgment either. More importantly, the defendant argues that this specific issue, which they characterize as its "own activities at sales calls," was not briefed on appeal by either party, so the Federal Circuit did not have all of the information before them. Bauer argues that it is free to move for summary judgment, since the appeals court was unaware that "in fact, no

evidence actually existed from which Epcon could prove that any infringements occurred."

The Court finds that the appeals court remanded because they thought there might be a genuine issue of material fact, not that there conclusively was. The Federal Circuit found that, according to the record, demonstrations took place. They did not analyze the content of the demonstrations or examine the method used at the demonstrations and compare it to Claim 2, likely because they did not have all the evidence before them. Epcon admits that there are ways to perform gas assisted injection molding that would not infringe the method of Claim 2. *See, e.g., infra* Section B.1 (discussing plaintiffs' stipulation on the record that to perform the method the gas pressure in the mold must be selectively increased, decreased, *and* held substantially constant).[5] In the absence of a finding by the higher court that all of the elements of the method were present in the demonstrations, it is left to this Court to examine the demonstrations to see if they infringe, or, at the least, create a genuine of material fact of infringement. If not, then summary judgment for the defendant is still available and appropriate.

After concluding that both parties can file summary judgment motions, the Court will now turn to the merits of the summary judgment motions. Since the arguments in three of the motions, plaintiffs' summary judgment motion and defendant's motions on lack of evidence and lack of

---

**5.** Bauer argues that its products can be used in injection molding processes without infringing:

(i) where the gas storage pressures are not *substantially* greater than the gas injection pressures, (ii) where the gas storage pressures are not *at all times* during an injection molding cycle substantially greater than the gas injection pressures, and (iii)

where the gas pressure in the mold is not increased, decreased *and* held constant during an injection cycle.

As mentioned above, at the least, Plaintiff agrees that any process that only does one or two of the three steps (increasing, decreasing, and holding the gas constant) would not infringe.

"substantially below," overlap significantly, the Court outlines the parties' arguments for all three motions in section 1. Section 2 analyzes and resolves the plaintiffs' summary judgment motion, and section 3 does the same for two of defendant's summary judgment motions. Section 4 briefly addresses defendant's motion on invalidity of the patent.

### 1. Parties' Arguments on the Evidentiary Summary Judgment Motions

■ One of the central disputes throughout all three motions is what this Court meant by "substantially below." In the first opinion, the Court construed the term "substantially" in two different contexts. *Epcon*, 134 F.Supp.2d at 846–47. Only the second one is relevant here, where Claim 2 states that the pressure of the gas injected into the mold must be "substantially below" the gas in the stored gas supply. The Court held the term should be read to mean "the pressure of gas injected into the mold is below that of the stored gas supply to a considerable degree." *Id.* at 847. The Court continued that in an "effort to forestall any future dispute [6] about the meaning of 'considerable,'" the term meant "large." *Id.* Also, while "not attach[ing] specific values to the respective pressures," the Court noted that pressure differentials of 6,000 to 11,-000 psi between the stored gas and the gas in the mold appear in the patent specification. *Id.* Thus, the Court found that "pressure differentials of 6,000 to 11,000 psi are 'substantial' for purposes of the interpretation of the disputed claims of the 455 patent, with the pressure of the stored gas supply always being the higher of the quoted pressures." *Id.* The Court concluded "[t]his is not to be taken to mean that other pressure differentials could not

be understood to be 'substantial' for the purposes." *Id.*

The Federal Circuit found that this Court correctly construed the phrase "substantially below." They did not say specifically whether they affirmed the numerical pressure differential that the Court attached to "substantially below," but neither did they criticize it.

Because of the ambiguity of the Court's first opinion, both sides argue that the Court's ruling was in its own favor. Defendant argues that the Court found that the pressure differential had to be between 6,000 and 11,000 to be "substantial." Defendant says that despite the Court's comment that other pressure differentials could be found substantial, "it is clearly understood in view of the specification, which only taught pressure differences between 6,000–11,000 psi, that any other pressure differentials would have to be in the 6,000–11,000 psi range." Defendant asserts this is true because if the pressure differential could be lower than 6,000 psi, then the patent is invalidated by prior art. Also, defendant argues that an independent person of ordinary skill in the art, Jon Butler, testified that "substantially below" meant pressure differentials between 6,000 and 11,000 psi. Bauer further asserts that its equipment is unable to create a pressure differential of between 6,000 and 11,000 because the maximum gas storage pressure for Bauer equipment is 6,000 psi. Consequently, because it defies the laws of physics to say that one can inject a gas into the mold at zero psi, Bauer equipment will always have a pressure differential less than 6,000. Bauer concludes its equipment could never infringe the plaintiffs' patent if the Court's opinion meant

---

**6.** Plaintiffs quite rightly observe that the Court's effort to forestall future disputes on

this issue appears to have failed.

that the pressure differentials must be at least 6,000 to 11,000.

Plaintiffs, on the other hand, point to the Court's language that said, "[t]his is not to be taken to mean that other pressure differentials could not be understood to be 'substantial' for these purposes" and argues that while 6,000–11,000 is substantially below, other pressure differentials could also satisfy the substantially below requirement.

Another central dispute focuses on a book entitled "Gas Assist Injection Molding" by Paul Dier and Richard Goralski, both Bauer employees ("the book"), published in September 2000. Plaintiffs argue that Chapter Thirteen of the book describes eleven case studies where the method of Claim 2 was employed to mold plastic parts. Many of the studies, according to plaintiffs, involve the use of a Bauer nitrogen generator, which has a supply of stored gas pressures up to 6,000 psi. Since many of the processes described involved mold pressures that did not exceed 2,500 psi or even 1,500 psi, plaintiffs argue that there would be a differential of 3,500 and 4,500 psi, which is a "substantial" one under the patent. Consequently, they assert that the book conclusively demonstrates that Bauer violated 35 U.S.C.

§ 271(b), inducement of infringement, because in each case, "the gas was injected into the mold to displace the resin in the mold cavity at pressures that were at all times during the injection cycle substantially below the pressure of the stored gas supply."

In response, defendant argues that the book does not conclusively show anything because there is no evidence that any of the demonstrations actually operated under the method of Claim 2. In particular, the case studies do not say what pressure the gas was stored at, so there is no way to evaluate whether the pressure differential was substantial enough. In addition to the requirement that the pressure differential must exceed 6,000 psi, defendant states there is no evidence that the gas pressure in the mold was selectively increased, decreased *and* held constant during any injection cycles. Defendant contends "there is no testimony whatsoever that any demonstration showed all three steps." Plaintiffs admitted on the record that the process must include all three to infringe the method of Claim 2 (Sept. 30, 2002 Trans. at 7).[7]

Finally, turning from the book, defendant examines the four categories of demonstrations identified by the Federal Cir-

---

**7.** Another dispute between the parties is who conducted the demonstrations in the book. Bauer states that all but two of the eleven case studies in describe molding operations that took place before the two authors were employed at Bauer and did not involve the use of any Bauer equipment. As for the remaining two, Bauer says that Epcon had full discovery of the case studies, so they are not new evidence or a surprise. Also Bauer says "Epcon's owner and President, Jon Erikson, was the superior of one of the authors when many of the pre-Bauer case studies took place and Bauer believes he is fully aware that these examples did not involve Bauer in any way."

Plaintiffs reply that if Bauer's claims that nine of the eleven case studies were done

before the authors became Bauer employees, it would be able to prove it, but Bauer has not produced any such evidence. In addition, Plaintiffs argue that the defendant could not possibly know what Jon Erikson did or did not know.

For summary judgment purposes, the Court need not resolve who performed the demonstrations. As discussed *infra* Section B.3, even taking the evidence in the light most favorable to plaintiffs and assuming that all of the case studies were done by Bauer employees with Bauer equipment, none of the eleven describe a case study where the pressure was selectively increased, decreased *and* held constant.

cuit and says there is no evidence that the demonstrations performed the method of Claim 2; they neither have elicited testimony regarding at least a 6,000 psi pressure differential nor that the gas was increased, decreased, and held constant during a single process. Bauer concludes that plaintiffs cannot survive summary judgment.

### 2. Plaintiffs' Motion for Summary Judgment: Evidence of Infringement

After reviewing the evidence in the light most favorable to the defendant, as the Court must do on Epcon's motion, there is no conclusive proof that Bauer performs the method of Claim 2. Epcon's proofs merely amount to admissions by Bauer that they have performed gas assisted injection molding, not that they have performed the method of Claim 2. Epcon has admitted that its patent is a smaller subset of the many ways gas assisted injection molding can be performed. For example, Epcon stipulated on the record that, to distinguish its patent from the prior art, their patented method must selectively increase, decrease, *and* hold the gas pressure within the mold substantially constant (Sept. 30, 2002 Trans. at 7). Consequently, the defendant may perform gas assisted injection molding without infringing if its method only accomplishes one or two but not all three of these requirements. None of the case studies in the book, which Epcon seems to consider a "smoking gun," describe a demonstration where all three requirements are met.[8] Similarly, the Bauer employee depositions show that Bauer sold equipment for and performed demonstrations of gas assisted injection molding, but there is no testimony that

conclusively demonstrates that the demonstrations were the very specific, detailed method of Claim 2. Consequently, summary judgment for Epcon must be DENIED.

The conclusion that summary judgment for Epcon is not warranted does not end the inquiry. The question remains whether Bauer's motions for summary judgment should be granted or whether, taking the facts in the light most favorable to the plaintiffs, there is a genuine issue of material fact for trial. The Court now turns to Bauer's motions for summary judgment.

### 3. Defendant's Motions for Summary Judgment of Non–Infringement Based on Lack of Evidence and "Substantially Below"

Even taking the evidence in the light most favorable to the plaintiffs, none of the demonstrations meet all three requirements that the pressure must be selectively increased, decreased and held constant to meet the method of Claim 2. The Court specifically asked plaintiffs at oral argument to point to a demonstration that had all three, and they were unable to do so (Sept. 30, 2002 Trans. at 9). While they pointed to page 81 of the book, which does appear to have meet all three requirements, defendant correctly observes that the diagram on page 81 is not a description of a demonstration that actually occurred, but is merely an example of a possible configuration. That Bauer employees and equipment *might* be able to perform the method is not even circumstantial evidence that Bauer employees actually do use the equipment in an infringing manner. And as indicated above, the case studies plaintiffs point to do not show the method of

---

**8.** In addition, none of the case studies state what the pressure of the stored gas supply was during the demonstration. Consequently, even if substantially below can mean less than a 6,000 psi differential, as plaintiffs assert, there is no way for the Court to evaluate whether the differential is substantial without such evidence.

Claim 2 being performed because there is no indication of the pressure of the stored gas, nor is there any case study that shows selective increasing, decreasing, and holding constant of the gas in one process.[9]

Even after extensive discovery in this case, Epcon is without evidence that the method of Claim 2 ever took place, either by Bauer or anyone else. Therefore, they have not created a genuine issue of material fact, and summary judgment for defendant on lack of evidence grounds is GRANTED.

■ In addition, because of the exemplary pressure differentials in the specification,[10] the Court makes explicit its prior, ambiguous ruling and holds that "substantially below" requires a pressure differential of at least 6,000. In *Litton Systems, Inc. v. Honeywell, Inc.*, 145 F.3d 1472, 1474 (Fed.Cir.1998) the Federal Circuit discussed the importance of specificity with regard to patents, stating:

> Public notice of the scope of the right to exclude, as provided by the patent claims, specification and prosecution history, is a critical function of the entire scheme of patent law. The notice function is critical because it provides competitors with the necessary information upon which they can rely to shape their behavior in the marketplace.

Because plaintiffs admitted on the record that no one practices gas assisted injection molding at pressure differentials of

6,000 or higher (Sept. 19, 2002 Trans. at 46), Bauer obviously did not infringe Claim 2. Thus, defendant's motion for summary judgment for lack of "substantially below" is also GRANTED.

### 4. Defendant's Motion for Summary Judgment on Invalidity

Defendant's third summary judgment motion is directed at attacking the validity of the 455 patent. In light of the above findings in defendant's favor, the Court declines to reach this argument and declares this motion MOOT.

### A. Plaintiffs' Motions for Sanctions

### 1. Rule 26 and 37 sanction motion

■ In the first motion for sanctions, the plaintiffs ask for sanctions due to defendant's alleged violation of Federal Rules of Civil Procedure 26 and 37. Rule 26(g)(2) states:

> (2) Every discovery request, response, or objection made by a party represented by an attorney shall be signed by at least one attorney ... The signature of the attorney ... constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after reasonable inquiry, the request, response or objection is:
>
> 2. consistent with these rules and warranted by existing law or good faith argument for the extension,

---

9. Further, without evidence that the case studies or other demonstrations were the method of Claim 2, there is no evidence to support Epcon's claims for inducement of infringement, pursuant to 35 U.S.C. § 271(b), because there is no "active inducement" as required by the statute. Similarly, Epcon's claims of contributory infringement under 35 U.S.C. § 271(c) fail because the Bauer equipment can be and is used in a non-infringing manner, such as where the pressure is not increased, decreased, and held constant within the same process.

10. Defendant argues that the injection pressures in the specification include 1,000, 3,000, 5,000, and 6,000 psi. The specification also provides a pressure of stored gas at 12,000 psi. Thus, applying a stored gas supply of 12,000 psi and a gas injection pressure ranging between 1,000 psi and 6,000 psi, the defendant asserts that the specification teaches a pressure differential of 6,000 to 11,000 psi.

modification, or reversal of existing law;

3. not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and

(C) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

(3) If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Fed.R.Civ.P. 37(d) states that the court may impose sanctions if a party fails:

(2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories.

Plaintiffs argue that several of its repeated discovery requests covered the book, and defendant knew about the book's development and acted in bad faith by failing to provide it.[11] Plaintiffs state that the book was mentioned by some Bauer employees at depositions, and when Epcon tried to follow up, Bauer kept asserting that the items mentioned were not relevant. Plaintiffs ask the Court to sanction Bauer for not disclosing such a conclusive

piece of evidence, citing *Bell v. Automobile Club of Michigan,* 80 F.R.D. 228 (E.D.Mich.1978) in support, which states "[d]iscovery is not to be treated as a game of hide-and-seek. It should be a forthright effort to expedite litigation so that there is no unnecessary waste of time or expense."

As a sanction, plaintiffs seek leave to amend to add an infringement count regarding Patent 463, leave to conduct limited discovery of the molding activities of a few Bauer customers, responses to all of its discovery requests, including the underlying documents used in generating the case studies in Chapter 13 of the book, and costs for having to respond to the defendant's motions for summary judgment, for the appeal, and for this motion.

Defendant says that the book is a "red herring." The defendant asserts that nine of the eleven examples relate to work done before the authors were Bauer employees. Of the two examples left (case studies seven and eleven), defendant states that the processes of those two examples were performed by customers, not Bauer. Also, the plaintiffs were given the complete files underlying the examples in discovery (Bates # 08284–08368, D's Exh. 37, and Bates # 07716–07791, D's Exh. 38), and the authors were questioned during depositions regarding those two case studies. Defendants assert that one of the case studies was even included in the appendix on appeal. Since plaintiffs have had all of the discovery on the information in the book to which they are entitled, defendant states sanctions are not appropriate.

Plaintiffs reply that the defendant produced information about the sale of equipment to the two companies involved in case studies 7 and 11, but not the information about the demonstrations that took place.

---

11. While the book was not published until after this Court's decision, plaintiffs maintain there were drafts available prior to the publi-

cation that defendant knew should have been disclosed.

After reviewing the evidence submitted by the plaintiffs, it does appear that they asked for the book with as much specificity as possible. In particular, plaintiffs requested:

All documents prepared by any individual at Bauer, including but not limited to, Mr. Paul Dier or Mr. Richard Goralski relating to any activities associated or connected with the sale, offer for sale, use, testing, evaluation, proposals, manufacture, or assembly of Defendant Bauer's nitrogen control unit.

(P's Exh. K). On January 27, 2000, defendant responded:

Bauer objects to this Request as calling for the production of documents not relevant or reasonably calculated to lead to the discovery of admissible evidence. Bauer also objects to this Request as vague, overbroad, and unduly burdensome because, for example, all documents "prepared by any individual at Bauer ... relating to any activities associated or connected with the ... nitrogen control unit" could potentially required searching the files of every individual at Bauer.

(Id.). However, defendant knew what plaintiff was seeking because at an earlier deposition of Richard Goralski, plaintiff specifically requested the Bauer book.

Q (P's Attorney): Does such a thing [the Bauer book] exist now in let's say draft form?

A (Mr. Goralski): Yes.

Q: ... you wouldn't have any problem producing that?

A: Yes, I would.

Q: Why is that?

A: Because the book is available for sale ... [y]ou're welcome to purchase it, I wouldn't give a copy to anyway ... [s]o, therefore, if you would like to purchase one, I would be happy to sell you one.

(P's Exh. J).

While defendant says it provided the underlying documents that constituted the books, the Court finds it unnecessary to resolve whether the cited documents were the ones plaintiffs were seeking. Even if the documents are not the ones plaintiffs requested, and even if the defendant was unduly evasive and should have produced a draft of the book in response to plaintiffs' requests, sanctions are not warranted because of the Court's conclusion that the book does not create a genuine issue of material fact on infringement. Plaintiff's motion for sanctions under Rule 26 is DENIED.

As for Rule 37 sanctions, defendant says the rule only imposes sanctions for failing to respond in writing. Since defendant provided written responses to the interrogatories, Rule 37 does not apply, and plaintiffs' only course of action was to file a motion to compel, which they did not.

The Court agrees that Rule 37 sanctions are available only if the opposition does not file a written response. *Bell* is distinguishable because defendant's evasiveness, if it existed, was not as egregious as that found sanctionable by the *Bell* court. Because defendant filed a written response to plaintiffs' discovery request, plaintiffs should have filed a motion to compel. Rule 37 sanctions are DENIED.

Even though plaintiffs did not seek leave to amend the complaint separately from the sanction motions, the Court will address it briefly. Plaintiffs assert that the reason the request to amend is so late is that Patent 463, the parent to Patent 455, was caught up in an interference proceeding with the patent office until after the initiation of this lawsuit. The interference was subsequently resolved in Mr.

Loren's favor on March 24, 1999. In addition, plaintiffs argue that this Court already used the prosecution history of 463 in this proceeding, and the new claim language is mostly the same as Claim 2 in this patent (it does not include the term 'substantially below'), so the terms could be interpreted the same way. Plaintiffs says that allowing the amendment "would not require Bauer to expend any additional resource to conduct discovery and prepare for trial."

Defendant, of course, disputes that the amendment would not require any additional expense. Defendant argues that just because the terms are the same does not mean that the specifications are the same, which affects claim construction, which in turn means there would have to be a new *Markman* hearing. Defendant outlines the other types of discovery the new claim would entail, and asserts the amendment would cause a delay of up to one to two years.

The Court finds that date of March 1999, when the interference proceeding was resolved in Mr. Loren's favor, speaks for itself. Plaintiffs should have amended long before now, and whether or not .the book was improperly withheld has no bearing on that fact. While the plaintiffs argue that there is no prejudice and the issues have already been briefed, defendant disagrees and describes how much work would go into adding the claim. As with most disputes, it is probably somewhere in between those two positions. However, at the least, the new claim would indeed require its own *Markman* hearing and additional discovery. Therefore, at this late date, leave to amend is DENIED.

*1. Rule 11 sanctions*

█ Plaintiffs' second motion seeks sanctions based on Rule 11. Federal Rule of Civil Procedure 11(b)(4) states that motions must be signed to demonstrate "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information."

Plaintiffs are seeking to sanction defendant because "Bauer falsely asserted that it does not perform gas assisted injection molding procedures. Bauer sought and received an order granting summary judgment of non-infringement and even sought sanctions against plaintiffs on the basis that there was not a 'shred of evidence' to support plaintiffs' charge of infringement of claim 2 of the '455 patent" (P's brief at 1). This motion is based on plaintiffs' belief that the book is clear evidence of infringement by Bauer.

Defendant responds that plaintiffs are improperly attempting to fit what is a discovery dispute into Rule 11, and the Court agrees. If defendant deliberately withheld the book, then plaintiffs' remedy is discovery sanctions under Fed.R.Civ.P. 26, which the Court has already concluded are not warranted. As for defendant's assertion that it did not infringe, it is simply its defense to an infringement lawsuit. Plaintiffs are not entitled to sanctions for defendant's presentation of a defense. Therefore, plaintiffs' motion for Rule 11 sanctions is DENIED.

## V. CONCLUSION

For the reasons stated above,

(1) Plaintiffs' Motion for Summary Judgment of Infringement of Claim 2 of the '455 patent [68–1] is DENIED.

(2) Defendant's Motion for Summary Judgment of Non-infringement Based on Lack of Evidence [72–1] is GRANTED.

(3) Defendant's Motion for Summary Judgment of Non-infringement

Based on Lack of "Substantially Below" [71–1] is GRANTED.

(4) Defendant's Motion for Summary Judgment that Patent No. '455 is Invalid under 35 U.S.C. §§ 102 and 103 [73–1] is MOOT.

(5) Plaintiffs' Motion for an Order Imposing Sanctions Against Bauer under Fed.R.Civ.P. 26(g) and 37(d) [70–1] and to amend the complaint pursuant to Fed.R.Civ.P. 15 [70–2] is DENIED.

(6) Plaintiffs' Motion for an Order Imposing Sanctions Against Bauer under Fed.R.Civ.P. 11(b)(4) [69–1] is DENIED.

IT IS SO ORDERED. A judgment will be filed accordingly.