**ALTICOR INC., a Michigan corporation, Plaintiff,**

v.

**ULTRA–SUN TECHNOLOGIES, INC., a California corporation, Defendant.**

No. 1:02–CV–73.

United States District Court,
W.D. Michigan,
Southern Division.

May 30, 2003.

Laura Beth Miller, Timothy Q. Delaney, Timothy P. Lucier, James R. Sobieraj, Brinks Hofer Gilson & Lione, Chicago, IL, for Alticor Inc., a Michigan corporation, plaintiff.

Gregory N. Longworth, Stephen D. Turner, Law Weathers & Richardson, PC, Grand Rapids, MI, Vito A. Canuso, III, Irfan A. Lateef, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, for Ultra–Sun Technologies, Inc., a California corporation, defendant.

## OPINION

ROBERT HOLMES BELL, Chief Judge.

In this case, Plaintiff alleges that Defendant's Sun Pure SP–10 home water purifier infringes on Plaintiff's patents in violation of 35 U.S.C. § 271. As a result, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a). Before this Court is Defendant's motion for summary judgment on Plaintiff's infringement claims.[1] In the motion, the parties dispute the interpretation of claim language and whether various structures are equivalents. For the following reasons, Defendant's motion for summary judgment on Plaintiff's infringement claims is GRANTED.

### I.

#### A. The Patents

Plaintiff is the assignee of U.S. Patent No. 5,536,395 (the " '395 patent") and U.S. Patent No. 5,698,091 (the " '091 patent"). Both patents describe a home water purification system with an ultraviolet sterilization chamber for killing microorganisms in filtered water and have identical specifications. ('395 patent Cl. 1 ("a source of radiant energy ... for killing microorganisms in the water"), 6 (same), 24 (same), '091 patent Cl. 1 (same)). As explained in the patents' specification, the ultraviolet sterilization chamber's ability to kill microorganisms is dependent on the ultraviolet lamp and the contact between the radiant

---

1. Plaintiff has also filed a motion for partial summary judgment on Counts V and VI of Defendant's counterclaims. As Defendant does not oppose Plaintiff's motion, the motion is GRANTED.

energy produced by the ultraviolet lamp and the microorganisms. ('395 patent col. 11. 64 to col. 21. 9 & col. 81. 44 to col. 91. 3). Thus, the '395 patent claims describe how to monitor the ultraviolet lamp, and the '091 patent claims explain how to ensure sufficient contact between the radiant energy produced by the ultraviolet lamp and the microorganisms.

To monitor the ultraviolet lamp, the '395 patent claims "a radiant energy monitor operable for monitoring the performance of said radiant energy and providing an indication when said source has reached end-of-life." ('395 patent Cl. 1, 6). It also claims "a radiant energy monitoring means for monitoring the performance of said source of radiant energy and providing an indication when said source has reached end-of-life." ('395 patent Cl. 24 emphasis added). By alerting the home user to replace the ultraviolet or radiant energy source at the appropriate time, the '395 patent suggests a home water purification system that more effectively kills microorganisms. ('395 patent col. 11. 64 to col. 21. 9).

The '091 patent claims a way to improve the kill rate of microorganisms by ensuring sufficient contact between the radiant energy and the microorganisms. Specifically, claim 1 of the '091 patent describes "a source of radiant ultraviolet energy for receiving water from said filter and killing microorganisms in said water, said source of radiant energy comprising: ... directional means proximate said source water inlet for establishing *plug-like spiral flow* within said open chamber." ('091 patent Cl. 1 emphasis added). Plug-like spiral flow improves water purification by ensuring that all microorganisms in the water are sufficiently exposed to the ultraviolet or radiant energy source. ('091 patent col. 81. 44 to col. 91. 3).

B. The Accused Device

The accused device, the Sun–Pure water purifier, has an ultraviolet sterilization chamber to kill microorganisms in filtered water. "The ultraviolet lamp [in the sterilization chamber] has a useful life of one year or 9,000 hours with a one-month grace period " (Pl.'s Br. Opp'n Ex. C User's Guide at 7). After a year, "[t]he [ultraviolet] lamp may not be effective and must be replaced." (Pl.'s Br. Opp'n Ex. C User's Guide at 7). To indicate when this year has elapsed, the Sun–Pure water purifier uses three indicator lights connected to a timer circuit. (Pl.'s Br. Opp'n Ex. C User's Guide at 7; Def.'s Br. Supp. Ex. 1 Decl. R. Scott ¶¶ 3–6). When the ultraviolet "lamp has been in service for less than 12 months," the green light is on. (Pl.'s Br. Opp'n Ex. C User's Guide at 7). When the ultraviolet "lamp has been in service for more than 12 months," the yellow light is on. (Pl.'s Br. Opp'n Ex. C User's Guide at 7). When the ultraviolet "lamp has been in service for more than 13 months," the red light is on. (Pl.'s Br. Opp'n Ex. C User's Guide at 7). Additionally, "[t]he blue light on the front of the unit ... shows that the ultraviolet sterilizer is operating. The blue light should always be on when the Purifier is operating. If the light does not turn on, the ultraviolet lamp is defective and should be replaced." (Pl.'s Br. Opp'n Ex. C User's Guide at 4). Finally, because the ultraviolet sterilization chamber is made of plastic, which deteriorates when exposed to ultraviolet light, the chamber has a stainless steel liner. This liner is secured in place by two stainless steel C-shaped clips. (Def.'s Br. Supp. Ex. 1 Decl. R. Scott ¶ 11).

## II.

Determining the meaning of disputed claim terms is a question of law for resolution by the Court. *Markman v.*

*Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995). In interpreting the claims of a patent, the court should initially consider the intrinsic evidence, which consists of the patent claims, the specification, the drawings, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). A patentee is free to define the terms. When the specification or the prosecution history does not define a claim term in a unique or special way, that term is to be given its "ordinary and accustomed meaning" to those skilled in the art at the time of the invention. *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1249 (Fed.Cir.1998); *Hoover Group Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299 (Fed. Cir.1995). Claims are to be construed, if possible, to uphold their validity. *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed.Cir. 1999).

The parties dispute the meaning of claims 1, 6, and 24 of the '395 patent and claim 1 of the '091 patent. In claims 1 and 6, the '395 patent claims "*a radiant energy monitor* operable for monitoring the performance of said radiant energy and providing an indication when said source has reached end-of-life." ('395 patent Cl. 1, 6 emphasis added). According to Plaintiff, the proper construction of this claim is "a device that (1) monitors the performance of a radiant energy source (e.g., an ultraviolet ['UV'] lamp) and (2) provides some type of perceptible indication when the source has reached the end of its useful life." (Pl.'s Cl. Constr. Br. Docket # 33 at 10).

■ Claim 24 of the '395 patent claims "a radiant energy monitoring means for monitoring the performance of said source of radiant energy and providing an indication when said source has reached end-of-life." ('395 patent Cl. 24). Although claims 1, 6, and 24 of the '395 patent are similar, claim 24 unlike claims 1 and 6 is written in means plus function form. Analyzing means plus function claims is a two-step process. 35 U.S.C. § 112 ¶ 6. First, the Court must determine the function of the limitation. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed.Cir.2003). Second, the Court "ascertains the corresponding structure in the written description that is necessary to perform that function." *Id.* According to Plaintiff, the function of claim 24 is "monitoring the performance of the source of radiant energy and providing an indication when said source has reached its end of life." (Pl.'s Supplemental Cl. Constr. Br.—Claim 24 Docket # 50 at 2). The structures associated with this function are a "voltage detection circuit, [a] microprocessor[, and] equivalents." (Pl.'s Posterboard Presentation Docket # 125; *see also* Pl.'s Supplemental Claim Constr. Br.—Claim 24 Docket # 50 at 2, 5–6).

In response to these proposed claim constructions, Defendant argues that "to monitor the performance of the radiant energy source," the language used in Plaintiff's proposed claim constructions for claims 1, 6, and 24, requires monitoring the function of the radiant energy source *and* the elapsed time that the radiant energy source is functioning. Plaintiff counters that its claim constructions require either monitoring the function of the radiant energy source *or* monitoring the elapsed time and that the proper construction of the claims does not require monitoring the function of the radiant energy source. Because the Court finds that the accused device does not monitor the function of the radiant energy source, this opinion only explains that the claims require monitoring the function of the radiant energy source.

The '395 patent claims use the word "performance," and the meaning of "performance" is central to the parties' dispute. According to the parties, a dictio-

nary defines performance as "the act of performing or the state of being performed," "the way in which someone or something functions: *rated the machine's performance,*" or "something performed; an accomplishment." (THE AMERICAN HERITAGE DICTIONARY (2d College ed.1985) (photo. reprint Def.'s Reply to Pl.'s Claim Construction Br. Docket # 51 Ex. 2)). Plaintiff argues that the language of the claims is open-ended and does not specify a specific accomplishment. The language of the claims does not support this argument. Claims 1, 6, and 24 of the '395 patent, all specifically mention that the "source of radiant energy ... [is] for killing microorganisms in the water." ('395 patent Cl. 1, 6, 24; *see also* '091 patent Cl. 1 (same)). As this language clearly indicates, to monitor the performance of the radiant energy source requires monitoring the radiant energy source's killing of microorganisms. Because a "burned out, broken[,] ... missing" or otherwise nonfunctioning radiant energy source is not performing, ('395 patent col. 12, l. 3–4), the monitor must detect or check for this condition.

The parties have also filed claim construction briefs for claim 1 of the '091 patent. This claim describes "a source of radiant ultraviolet energy for receiving water from said filter and killing microorganisms in said water, said source of radiant energy comprising: ... directional means proximate said source water inlet for establishing *plug-like spiral flow* within said open chamber." ('091 patent claim 1 emphasis added). As this claim is written in means plus function form, the Court must determine the function and ascertain the corresponding structure. 35 U.S.C. § 112 ¶ 6; *Altiris, Inc.,* 318 F.3d at 1375. The parties agree that the function is to create plug-like spiral flow. According to Plaintiff, the structure for this function is a "diverter plate, elongate, bottle-shaped vessel and a radial baffle." (Pl.'s Poster-

board Presentation Docket # 125; *see also* Pl.'s Br. Docket # 68 at 6). Defendant does not dispute this structure. (Def.'s Br. Docket # 72 at 2). Additionally, these structures are consistent with the specification's explanation that "[t]he radial baffle ... creates a *plug-like spiral flow.*" ('091 patent col. 81. 52–54). Thus, as there is no dispute as to the construction of claim 1 of the '091 patent, the Court is not required to interpret this claim.

### III.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Facts are "material" if under the substantive law, their existence "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After viewing the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), an issue concerning a material fact is genuine if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Under Rule 56, the nonmoving party does not create a genuine issue of material fact through "mere allegations or denials." FED. R. CIV. P. 56(e). Instead, the nonmoving party "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is not proper if there

is a genuine issue of material fact or "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case for which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, if the nonmoving party has the burden of proof on an issue, the moving party may prevail simply by "pointing out to the district court [ ] that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

## A. Infringement of the '395 Patent

■ Defendant argues that it is entitled to summary judgment on claims 1 and 6 of the '395 patent because the Sun–Pure water purifier does not have a radiant energy monitor. Plaintiff counters that the Sun–Pure water purifier does detect the function of the radiant energy source by having a user look through a window in the Sun–Pure water purifier. Nonetheless, as Plaintiff acknowledges in its claim construction, a monitor is a device. (Pl.'s Cl. Constr. Br. Docket # 33 at 10 ("a *device* that (1) monitors the performance of a radiant energy source (e.g., an ultraviolet ['UV'] lamp) and (2) provides some type of perceptible indication when the source has reached the end of its useful life." emphasis added)). A user looking through a window is not a device. Thus, no reasonable jury could find that the accused device's window infringes claims 1 and 6 of the '395 patent.

Plaintiff also argues that the window is equivalent to a radiant energy monitor. "Under the doctrine of equivalents, a finding of infringement is appropriate if each element of the accused device performs substantially the same function, in sub-

stantially the same way, to achieve substantially the same result." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.,* 324 F.3d 1308, 1317 (Fed.Cir.2003). Looking at the window, a user can detect the function of the ultraviolet lamp, and by determining the function of the ultraviolet lamp, the user can achieve the same result— timely changing the ultraviolet lamp to ensure killing microorganisms in filtered water. Despite these similarities, the Sun Pure water purifier does not monitor the function of the ultraviolet lamp in substantially the same way as claims 1 and 6 of the '395 patent. The window or light pipe does not check or monitor the ultraviolet lamp. It simply allows the user to look inside the ultraviolet sterilization chamber. Consequently, no reasonable jury could find that the accused device's window is equivalent to the radiant energy monitor in claims 1 and 6 of the '395 patent.

Although the parties do not separately discuss claim 24 of the '395 patent, it is appropriate to analyze infringement of this claim separately because it is in means plus function form. 35 U.S.C. § 112 ¶ 6. As previously explained, the function of this claim includes determining the function of the ultraviolet lamp. The accused device's window permits the user to detect this function. Accordingly, the issue is whether the accused device's window is equivalent to the claim's means. Plaintiff contends that the means for achieving the function in this claim are a "voltage detection circuit, [a] microprocessor[, and] equivalents." (Pl.'s Posterboard Presentation Docket # 125; *see also* Pl.'s Supplemental Claim Constr. Br.—Claim 24 Docket # 50 at 2, 5–6). Neither a voltage detection circuit nor a microprocessor is similar to a window. Voltage detection circuits and microprocessors are electrical in nature, and a window is not. Hence, no reasonable jury could find that the accused device's window is equivalent to either a

voltage circuit or a microprocessor. In summary, Defendant is entitled to summary judgment on Plaintiff's claim of infringement of claims 1, 6, and 24 of the '395 patent.

## B. Infringement of the '091 Patent

Defendant also alleges that summary judgment is proper on the claim of infringement of the '091 patent because the Sun–Pure water purifier does not have the structure disclosed in claim 1 of the '091 patent. Plaintiff counters that there are genuine issues of material fact as to whether the Sun–Pure's ultraviolet sterilization chamber with its C-shaped clips is equivalent to a "diverter plate, elongate, bottle-shaped vessel and a radial baffle." (Pl.'s Posterboard Presentation Docket # 125; *see also* Pl.'s Cl. Constr. Br. '091 Patent Docket # 68 at 6). Contrary to Plaintiff's argument, the C-shaped clips are not substantially similar to "a diverter plate ... and a radial baffle." Hence, no reasonable jury could find that the C-shaped clips are equivalent to the means disclosed in claim 1 of the '091 patent. As a result, Defendant is entitled to summary judgment on Plaintiff's claim of infringement of the '091 patent.

## IV.

As explained, Defendant's motion for summary judgment is GRANTED. Accordingly, an order consistent with this opinion will be entered.